STEPHEN M. BALLEW v. THE STATE.

1. Prosecutions depending wholly upon circumstantial evidence often demand a greater latitude for the presentation of such evidence than is allowable when direct and positive testimony is also relied upon.

2. A conviction for murder in the first degree will not necessarily be set aside on account of errors committed by the court trying the case. The error must be material and to the prejudice of the defendant.

3. It was error to exclude from the jury, on the trial of a murder case, the verdict of the coroner's inquest, when the same was not impeached. The verdict should have been admitted, not as proof positive of the matters it contained, but as the opinion of the jury who held inquest over the body of the deceased; but this court will not reverse a case on account of such error, when it is evident that the admission of the verdict of the coroner's inquest could not have affected the result of the case.

APPEAL from Collin. Tried below before the Hon. W. H. Andrews.

In the spring of 1870, the accused made a trip to this State from Illinois, on a trading expedition, and brought with him several head of horses to dispose of for the father of the deceased. On his return to Illinois, he falsely represented to the owner of the horses that he had disposed of them for a good price, by giving the purchaser "time" on the purchase, and

promised to collect the money on his return in the succeeding fall, and by false representations as to the success of his operations in this State, he induced the deceased to accompany him on a like trading expedition to Texas in the succeeding fall.

On the 13th of September, 1870, the accused and the deceased left Quincy, Illinois, for this State, traveling in a wagon. The wagon and team were the property of the deceased. On the 21st of October, 1870, they were seen to encamp on the East fork of the Trinity River, in Collin county; the next day accused was at the residence of Jonathan Ballew in Collin county. At that time he was alone and disposed of the wagon and team as his own property, and then returned to Illinois. A short while afterwards, the body of an unknown person was found near where the accused and deceased had encamped on the 21st of October, 1870, and was identified as the body of J. P. Golden, the traveling companion of the accused.

On the trial of the case the State was allowed, over the defendant's objection, to prove that the representations made by the accused as to the disposition he made of the property of G. W. Golden were false, and that, instead of selling the horses as he represented to the owner, he had left them in the possession of another person, and claimed them as his own property. The State was also allowed to introduce in evidence a certain letter written by the accused to his sister, previous to his second trip to Texas, when it is alleged that he murdered the deceased, containing false statements as to his health, etc. On the return of the accused to Illinois, he was married to the sister of the deceased, in clothes which were proved to have belonged to the deceased.

The above is an outline of the evidence admitted on the trial of the case, over objections of defendant's counsel based on the ground of irrelevancy, and treated of in the opinion of the court.

*Throckmorton & Brown*, for the appellant.

*Wm. Alexander, Attorney-General*, for the State.

OGDEN, J.   At the fall term of the District Court for Collin county, the appellant was tried and convicted of the murder of James P. Golden, and the jury trying the case condemned him to be hung, and from the judgment entered up in the case he has appealed to this court.

From the record, it appears that the conviction was founded mainly upon circumstantial evidence, and therefore we have felt it our duty to examine and scrutinize with great care and caution every circumstance proved on the trial, which would tend legitimately to the elucidation of the truth of the case.   There being no assignment of error in the record to aid us in the investigation of the case, we have been compelled to study with great care every portion of a voluminous transcript, in order to satisfy ourselves in regard to the questions raised and the argument advanced in the brief of counsel for appellant.

In their bills of exceptions and motion for a new trial, counsel for the defendant below complain of two errors: first, the admission of irrelevant and improper testimony against the defendant, and the rejection by the court of proper and material evidence of the defense.

It may not be improper to remark in this connection, that when a prosecution is dependent wholly upon circumstantial evidence for its support, the nature of the case in many instances demands a greater latitude in the presentation of the evidences of those circumstances, than where a conviction is sought upon direct and positive testimony.   But the great danger of imposition and deception in evidence purely circumstantial renders it of vital importance that courts and juries should carefully scrutinize every fact and circumstance before finding the defendant guilty of a high crime. · It is sometimes exceedingly difficult for the court in trying a case to determine whether a certain fact proposed to be proven is pertinent or relevant either to the prosecution or defense, and it not unfrequently occurs— especially in cases dependent upon circumstantial evidence— that a single fact, when first presented, appears wholly independent of and irrelevant to the case at bar, yet, in the further progress

of the investigation, may become a very important link in the chain of evidence to establish the truth or falsity of the allegations.

We are not prepared to adopt in its broadest sense the rule proposed by the learned counsel for the appellant, that "if there "has been error committed, the judgment will be reversed," for the reason that we fear but few human judgments or actions would be able to stand the test of so rigid a demand; but are inclined to follow the more practical rule suggested by the same learned counsel, that when this court shall discover that an error has been committed in the lower court, and that error has influenced the judgment of the court, then the judgment should be set aside and the error corrected, if possible. It would be quite remarkable if there had been no error committed in this case on the trial, protracted for many days, under circumstances well calculated to create no small degree of excitement; and yet we are pleased to notice the evidences of the great ability and prudence of the learned judge who presided over the trial below.

After a careful examination of the testimony admitted on the trial of this case over the objections of the appellant, we are decidedly of the opinion that there was no such error in the ruling of the court, in that particular, as will require a reversal of the judgment. Two of the letters objected to were addressed to the deceased James P. Golden, in the early part of the year 1870, and it is presumed that they were offered in evidence to prove, in connection with other evidence, the deliberate purpose then formed, which defendant afterwards put into execution, and that his great professions of friendship and the representations of his own success were for the purpose of preparing the mind of his victim for the very trip south in which deceased was killed. The fabulous statements made in those letters, if supported by other evidence, might very properly be considered by the jury as designed as a decoy to draw his victim far off from his friends, and in connection with other testimony advanced on the trial and not objected to, we think was properly admitted to go to the jury for that purpose.

The whole testimony in this case tends strongly to establish the fact that appellant is a reckless and abandoned character, and that his whole connection with the Golden family, from the first, his false representations of his wealth, his pretended friendship for James P. Golden, whom he enticed down to Texas, and according to the verdict of the jury, there murdered, his return to Illinois and false representations to John W. Golden, his marriage with the sister of his murdered victim, had but one object and determination, and that was to get possession of the whole property of John W. Golden; and this view of the case will show most conclusively the materiality of John W. Golden's testimony in regard to appellant's statements that he had sold Golden's horses in Shreveport, for a good price. He wanted an excuse for other horses to be sold on the same terms, which he got; and at the same time, as a part of the one terrible plot, he induced James P. Golden to accompany him, that he might, in some unfrequented place in Texas, perpetrate the terrible crime of which he stands convicted.

It would appear from the testimony that, previous to the formation of his dark purpose against the whole Golden family, he was quite a different man; to some extent at least he was respected and confided in; but subsequently, he had greatly changed, and became restless and suspicious, a coward at night and a conscience-smitten creature by day; and it may be that it was for the purpose of proving this state of his mind, that the letter No. 19, addressed to his sister, was allowed, with other facts, to go to the jury—or it might have been admitted to prove his utter horror of and malignity against the Golden family, whom he had so terribly injured. But we are unable to see the peculiar relevancy of that letter for any purpose. It is claimed by appellant's counsel that as the letter was a tissue of falsehoods, and had no direct reference to the crime of which he had been convicted, and only convicted him of being a liar, it was improperly admitted to the jury. We are, however, of the opinion that while that letter, in view of all the testimony on the trial, could do him but little harm in proving

him to be a liar, yet it may have been considered material for other purposes, as heretofore suggested.

But there may have been error in the ruling of the court in refusing to admit the verdict of the coroner's inquest to go to the jury on the trial in this case. That verdict was not impeached, and should have been admitted, not as proof positive of what it contained, but simply as the opinion of the jury. If this error of the court has affected the verdict of the jury, or if there is any good cause for believing that the verdict might have been different but for this error, then the judgment must be reversed.

The verdict of the coroner's jury is as follows : " We, the " jury, find that deceased came to his death by violence from " the hands of some unknown person or persons—think it was " from gunshot and also from use of club : believe him to have "been about thirty-five years old, six feet high, and slender; " dark hair." This verdict is simply the opinion of the jury, and not the establishment of any fact, and was founded principally upon the testimony of other persons.

Upon the trial of appellant, all the witnesses but one that were before the coroner's jury were also before the court. The sheriff, Dr. Wiley, J. T. Scott, John Howell, and one of the coroner's jury, and others, whose testimony established beyond doubt or dispute nearly or quite the same facts as stated in the coroner's verdict. We are therefore clearly of the opinion that had the coroner's verdict been admitted on the trial of the case, the verdict and judgment could have been by no legal possibility anywise different from what it was ; and therefore, the ruling of the court in that particular, was not such an error as would authorize us in setting aside the judgment. And after a very careful study of the entire record, together with the brief and argument of counsel, we are constrained to say that, in our opinion, the appellant has had a fair and impartial trial by a jury of his countrymen; that the verdict and judgment are the legitimate conclusions of the law and the facts of the case.

The solemn duty, therefore, remains for us to affirm the

judgment, which is accordingly done. But, in view of the fact that the conviction in this case was had upon circumstantial evidence alone, and the bare possibility that those circumstances may have led to an erroneous judgment in this case, we here recommend for the appellant the exercise of executive clemency, in the commutation of the sentence to imprisonment for life.

Affirmed.