WM. HAMBY v. THE STATE.

1. Indictment for murder charged the defendant with having shot the deceased in the head, breast, and side, giving to him one mortal wound, of which mortal wound he then and there instantly died. *Held*, that if either of the wounds described proved mortal, the indictment would thereby be sustained; and therefore it was not bad on exception for insufficient description of the wounds.

2. Evidence was admitted identifying the dead body as that of a person who was seen the evening before, and who then stated that a horse of a certain description had escaped from him, and who, on being told that the defendant was in possession of a horse answering to that description, said that the defendant was the person he desired to see, and thereupon went in search of the defendant. *Held*, that the evidence was admissible, to identify the body found as that of the person with whom the witnesses conversed, and to show that there was some business or other relation between the deceased and the accused. The testimony was not objectionable as hearsay evidence, and the court did not err in admitting it.

3. Defendant was convicted of murder in the first degree. The conviction was had upon circumstantial evidence, and there was no evidence of ex-

press malice. *Held,* that when a homicide has been proved, that fact alone authorizes the presumption of malice, and, unexplained, would warrant a verdict for murder in the second degree. But express and premeditated malice cannot be presumed; and it was therefore error in the court below to overrule defendant's motion for a new trial.

4. See this case for evidence held to be insufficient to sustain a conviction for murder in the first degree.

APPEAL from Grayson. Tried below before the Hon. C. C. Binkley.

The opinion of the court sufficiently indicates the material facts of the case.

*Walton & Green,* for appellant. This case merits the most serious consideration of the court, not only because a human life is involved, but because also it is incumbent on the courts, to check promptly and with a steady hand any laxity that may creep into the administration of the criminal law, whereby old and well established rules, founded in wisdom, observed by judges and courts for centuries—to which there are no exceptions, are violated or set at naught, to the danger of human life and liberty.

The ends of justice can only be attained when the known rules for the ascertainment of legal truth are strictly remembered by those whose high duty it is to mete out the awards of the law, whether it be in contests between citizens over civil rights, or between the mighty power of the State and one who is charged with the commission of crime.

A person charged with crime is entitled to a fair and impartial trial; that is his constitutional right, the voice of the law, the demand of humanity, the prayer of pure and simple justice, the command of mercy, and the will of God.

The taking of human life, by judicial order, is no light matter. The known rules of law, whether they apply to substance or form, should, in the trial of a capital case, be as strictly observed as the nature of the case and mortal infirmity will permit.

The proof is defective, and fatally so, in failing to show that death was caused by the wounds described in the indictment.

The indictment must allege the manner of death; the evidence must correspond with the allegation.

The indictment charges wounds on the "side, breast, and "head," by gunshots. Trans. 1, 2. The proof is of wounds in the "back, side, and head," and "his throat was cut, " and looked as though it had taken five or six strokes to accom- "plish it." The wound in the throat is not mentioned. It will not be denied that an acquittal would follow where the indictment charged death by gunshots, and the proof showed death by poison, or by drowning, burning, or cutting. Who shall say that the gunshots or the knife were the cause of death? It is not right that the jury shall jump to a conclusion in a point so vital. There should be more care, deliberation, and a fuller array of facts, before a man's life is taken away by judicial order.

Hearsay evidence was admitted.

In no case is hearsay testimony admissible. Confessions, conversations had in presence of the parties, statements which take status as part of the res gestæ, may be heard, but in no case, under any circumstances whatever, can hearsay legally or safely go to the jury, to direct the forming of a verdict. In the case before the court it is clear to demonstration, that hearsay evidence was admitted, and was considered by the jury. The evidence of Jackson, and that of the two Methlins, in the parts detailing conversation with deceased, when Hamby was not present, some hours before the killing, were hearsay, and no distinctions, however finely drawn, can relieve the evidence from that character. The only question to determine is whether the evidence operated to any extent on the minds of jurors, to influence their verdict. If it did, the trial was not fair. If it did not, then it was immaterial. But who shall say whether it did or did not have an influence? It was the last feather that broke the camel's back. It evidently served to strengthen the case of the State, and the verdict returned was of the char-

acter the hearsay evidence was calculated to induce. It brought the parties together, when otherwise they would have been separate; it aided to brighten the chain of evidence, and to weld the links together; it served to make connections, and to outline a motive for the killing; taken by the jury as legal evidence, it was well calculated to give them confidence and imbue them with courage to come without hesitancy to the conclusion fatal to the defendant.

If the man be guilty, let him have a fair trial, free from any undue influence, because of illegal evidence—and if he must be hung let him be hung in vindication of a violated law—and not violate the law to hang him.

The verdict is contrary to the law and the evidence.

To this proposition we invite the careful attention of the court, for the reason that our minds are clear, not clouded with a single doubt, that this man can never, under the law of Texas, as interpreted by the Supreme Court, be convicted of murder in the first degree. (Paschal's Digest, Article 2267; Ake v. State, 31 Texas, 416; Lindsay v. State, Ante ——; see, also, Morgan v. State, and Maria v. State, cited in case, Lindsay v. State.)

*William Alexander, Attorney-General,* for the State.

OGDEN, J. The indictment in this case is certainly inartistically drawn, wherein it attempts to describe the wound of which the deceased died; but it in effect charges the defendant with having shot the deceased in the head, breast, and side, giving to him one mortal wound, of which mortal wound he then and there instantly died. Though this expression is a peculiar one, and might be held subject to criticism, yet it is believed that if either of the wounds described were proven mortal, the indictment would thereby be sustained; and it was not, therefore, bad on exception or demurrer.

The force of the objection made to the testimony of Jackson and Mrs. Methlin is not perceived. The deceased appears to have been a total stranger in the community, and we think the

testimony of these two witnesses was properly admitted, to identify the person with whom they conversed, with the deceased. Their testimony was also admissible to show that there was some business or other relation between the defendant and the deceased. And the testimony of Mrs. Methlin was also material, as showing that the deceased just before his death, was in search of the defendant. This testimony is not objectionable on the ground of being hearsay evidence, and the court did not therefore err, in admitting it to the jury.

But we think the court did err in overruling defendant's motion for a new trial. The conviction was had almost wholly on circumstantial evidence, and that failed to establish any evidence of express malice, and yet the jury found the defendant guilty of murder in the first degree, and assessed the death penalty.

The main circumstances proven on the trial, upon which this verdict was found, are substantially as follows : On the day the homicide is supposed to have been committed, the deceased and defendant were at Jackson's store, in Sherman, apparently quite friendly. They left the store and rode off together. Not long after, defendant went to Methlin's house and penned a horse there, which answered to the description of the one the deceased rode from Sherman, and said he had bought it. He got the horse and left for Ward's, his brother-in-law. He looked as though he had been drinking. Soon after defendant left Methlin's the deceased came, and appeared to have been drunk. He said he wanted to see defendant, who had his horse. The deceased left Methlin's for Ward's a little before sundown, and was last seen by Methlin near Ward's field. When defendant left Methlin's, he went to Ward's ; got there about two o'clock; was drunk and said he had killed a man in Sherman that day ; was at the house two or three times during the afternoon. He had the horse described as the one belonging to deceased, and also a gold watch supposed to be deceased's, which he said he had won. About sundown he got upon the horse he claimed to have won, and rode off. He was seen soon after riding south in a gallop, in the direction in which the body of

deceased was found, and the deceased running after him hallooing to defendant to stop. In about an hour defendant returned to Ward's house; he acted very strange and restless. At one o'clock in the morning he left on horseback. He told Ward that a man would be found dead near there.

On the next day the body of the deceased was found ; he had been shot in the back, head, and side, and his throat cut.

These are the material facts, proven to connect defendant with the deceased, and with the terrible tragedy, and we fail to discover the evidence of premeditation or deliberation or formed design to take the life or injure the person of the deceased. He may have previously got wrongful and illegal possession of the property of deceased, with a design to rob or swindle ; but if so, he had already accomplished that purpose, and up to the time he left Ward's house at sundown, he wanted nothing more of the deceased ; and the last time the deceased was ever seen alive, the defendant was fleeing, and the deceased pursuing. What immediately followed, or who made the attack, or for what purpose, the evidence wholly fails to inform us, excepting by deduction. The deceased was killed, and if by the defendant, without any explanation, or evidence of provocation or excuse, then the jury would be warranted in finding a verdict for murder, but not murder in the first degree.

When a homicide has been proven, that fact alone authorizes the presumption of malice, and unexplained would warrant a verdict for murder in the second degree. But express and premeditated malice can never be presumed ; it is evidenced by former grudges, previous threats, lying in wait, or some concerted scheme to kill, or do some bodily harm, as poisoning, starving, torturing, or the attempted perpetration of rape, robbery, or burglary, and these evidences of express malice, or some one of them, must be proven as directly as the homicide, before the jury are authorized in finding a verdict for murder in the first degree.

The distinction between murder in the first and second degrees has been so often discussed by this court, that we deem it necessary here only to refer to a few cases deciding this ques-

tion. (McCoy v. The State, 25 Texas, 33; Maria v. The State, 28 Texas, 698; Ake v. The State, 30 Texas, 473; Lindsay v. The State, and Williams v. The State, decided at this term.)

We think the evidence in this case fails to establish such facts as would authorize a verdict for murder in the first degree, when founded on circumstantial evidence alone, and that the court erred in overruling defendant's motion for a new trial; and as this case will go back for another trial, it may be proper to state that the evidence wholly fails to prove which of the wounds, or whether any or all of them, were mortal, and the probable cause of the death, excepting from inference or reason. This is certainly a material defect in the testimony, and such as would require a reversal of the judgment if otherwise legal and valid, but which may be corrected on another trial. The judgment is reversed and the cause remanded.

Reversed and remanded.