LINO GONZALES v. THE STATE.

No. 2991. Decided May 13, 1914.

Rehearing denied June 18, 1914.

1.—Murder—Accessory—Definition of.

To constitute one an accessory in this State, his participation in the crime and acts must all have occurred subsequent to the commission of the offense. Following Welsh v. State, 3 Texas Crim. App., 413.

2.—Same—Accomplice—Definition of.

To constitute one an accomplice, his acts must have occurred prior to the commission of the offense, and he, at the time, doing nothing in furtherance

of the common purpose and design. Following Smith v. State, 21 Texas Crim. App., 107.

### 3.—Same—Principals—Definition of.

If the party charged, though not actually present, is engaged in or is doing something in the chain of causation which leads up to the offense and is a necessary part of its accomplishment, he is a principal, though he may not be at the immediate time actually present. Following Bass v. State, 59 Texas Crim. Rep., 186.

### 4.—Same—Case Stated—Principal — Accomplice — Accessory—Charge of Court.

Where, upon trial of murder, the issue that appellant was an accomplice or accessory did not arise from the evidence, but showed that he was engaged in an unlawful enterprise and at the time of the homicide, by his acts and conduct performed his part in furtherance of · the common purpose and design, there was no error in the court's failure to submit a charge to acquit the defendant if the evidence showed that he was either an accomplice or an accessory.

### 5.—Same—Principal—Charge of Court—Personal Presence of Defendant.

Where, upon trial of murder, the evidence conclusively showed that defendant was along with those who actually fired the shots, and but a few yards away therefrom, engaged at the time in the furtherance of the common purpose and design, he was a principal, although not bodily present at the exact spot when the shots were fired, and the use of the words "whether personally present or not" in the court's charge on principals was not reversible error under the facts.

### 6.—Same—Circumstantial Evidence—Conspiracy—Rule Stated.

Where, upon trial of murder, perpetrated in the attempt of an armed invasion into the Republic of Mexico, in which defendant and others were engaged and had agreed to resist all interference to the extent of taking human life, and where there was no positive testimony to show that the killing of deceased was specifically within the compass of the original agreement between the parties, or that the identical homicide was within the contemplation of the parties at the time the agreement was formed, the defendant was not shown to be one of the persons who fired the fatal shot, there was no error in admitting in evidence all testimony in which said agreement could be shown as to the knowledge of defendant of the illegal enterprise and his own conduct, and that of his companions before, at, and after the commission of the offense. Following Blain v. State, 33 Texas Crim. Rep., 236, and other cases.

### 7.—Same—Indictment—Precedent.

Where, upon trial of murder, the indictment and the objections thereto were the same as in a companion case in which a motion to quash was overruled, there was no necessity of again discussing the questions involved. Following Serrato, recently decided.

### 8.—Same—Evidence—Securing Arms—Going Armed.

Upon trial of murder, growing out of an attempt by defendant and others to execute an armed invasion into the Republic of Mexico, there was no error in admitting testimony that defendant secured arms when he went into the camp, carried them all the time he was with the company and was armed when arrested, the evidence disclosing that the party was prepared to resist all those who might interfere with their purpose to the extent of taking human life.

Appeal from the District Court of Frio. Tried below before the Hon. J. F. Mullaly.

Appeal from a conviction of murder; penalty, six years imprisonment in the penitentiary.

The opinion states the case.

*R. W. Hudson* and *W. F. Ramsey* and *C. L. Black* and *Magus Smith* and *T. L. Pranglin*, for appellant.

*C. E. Lane*, Assistant Attorney General, for the State.—On question of co-conspirators and principals: Bowers v. State, 24 Texas Crim. App., 542; Mitchell v. State, 36 Texas Crim. Rep., 278; Henry v. State, 54 S. W. Rep., 592.

HARPER, JUDGE.—This is a companion case to that of J. A. Serrato, decided at the last sitting of this court, and as the questions raised as to the introduction of testimony and the charge of the court are, in the main, the same as in that case, it is not necessary to enter into an as extended discussion of them as was done in that case. In this case, as in that case, it is not contended by the State that appellant was one of those who fired the fatal shots which killed Ortiz, but that he became a principal by reason of the agreement he entered into with the others named, and his acts and conduct in furtherance of that agreement.

In this case appellant testified and admits that when he joined Rangel's company he knew they were going to Mexico to fight; that Rangel wanted appellant to help him and his party, and they were going to Mexico to take up arms in the interest of the party to which Rangel belonged, and that he, appellant, was going with Rangel to fight in the interest of the party. He also admits he was present when Ortiz and Buck were captured and tied by Rangel and his company; that he was present when Gardner and White were fired on; that he was with them during all the time they had Buck and Ortiz in their possession, and knew when Ortiz was killed; he says he was a short distance behind when Ortiz was killed, while Buck says he was with those guarding him, and that appellant was one of the men who captured him and Ortiz, and was one of the men who tied Ortiz and guarded them as they traveled through brush on their way to Mexico.

Neither the evidence for the State nor the defendant raises the question that appellant may have been an accomplice or accessory, for the evidence tends to show, and shows only, if it shows anything, that he was a principal in the commission of the offense, for he at the time of the killing of Ortiz was then engaged in the furtherance of the agreement which he admits he entered into, and the only question is whether or not the agreement and the acts and conduct of the appellant in furtherance thereof are such as to render him a principal offender. To constitute one an accessory in this State his participation in the crime and acts must all have occurred subsequent to the commission of the offense. (Welsh v. State, 3 Texas Crim. App., 419.) And to constitute one an accomplice, his acts must have occurred prior to the commission, and he at the time doing nothing in furtherance of the common purpose and design. In Bass v. State, 59 Texas Crim. Rep., 186, 127 S. W. Rep., 1020, this court said: "If the party charged, though not actually present, is engaged in or is doing something in the chain of causation which leads up to the offense and is a necessary part of its accomplish-

ment, he is a principal, though he may not be at the immediate time actually present." This we understand to be the clear holding of the court in the case of Dawson v. State, 38 Texas Crim. Rep., 9 and 50, and it is undoubtedly the conclusion reached by Judge White in the case of Smith v. State, 21 Texas Crim. App., 107, where it is said, that an accomplice is one whose acts are all performed before the commission of an offense, while a principal may not only perform some antecedent act, but when the offense for which he is on trial is actually committed is doing his part of the work in the furtherance of the common purpose," citing Berry v. State, 4 Texas Crim. App., 492; Heard v. State, 9 Texas Crim. App., 1; Wright v. State, 18 Texas Crim. App., 358. Under the evidence in this case the issue of appellant being an accomplice or accessory does not arise, for by his testimony alone he was along with his co-conspirators engaged in an unlawful enterprise, and at the time by his acts and conduct performing his part in furtherance of the common purpose and design.

The charge of the court on principals, which is an exact copy of that given in the Serrato case, is again severely criticised because of the use of the words "whether personally present or not." As the undisputed facts, even his own testimony, shows conclusively that appellant was along with those who actually fired the shots and not but a few yards away, engaged at the time in the furtherance of the common purpose and design, he would be a principal, although not bodily present at the exact spot when the shots were fired, if the homicide was committed in pursuance of and in furtherance of the accomplishment of the design, and committed while all the parties were actually engaged in the pursuance of the common purpose. The court recognized the fact that there was no positive testimony going to show that the killing of Ortiz specifically was within the compass of the original agreement as made between the parties, and no positive testimony showing that this identical homicide was in contemplation by any of the parties at the time the agreement was formed, and as appellant is not shown to be one of the persons who fired the fatal shot, his connection with the killing must be proven if proven by circumstantial testimony, and the court so instructed the jury. It was shown by positive testimony that appellant entered into an agreement to organize and invade Mexico on a hostile mission; that they were all armed and equipped to engage in war; it is further testified to that there was embraced in the original agreement a purpose to resist all interference, and testimony to show an intention to kill all those who interfered with the accomplishment of the main purpose and design, and circumstances in the case would tend to show that Ortiz was captured and held to prevent him with others from interfering in the accomplishment of the common purpose, and when he refused to go along with them he was killed to keep him from reporting their purpose and design, and thus with others frustrate it. Under such circumstances it is said in the Noftsinger case, 7 Texas Crim. App., 301: " 'In a case like the present, depending wholly upon circumstantial evidence, the mind seeks to explore every possible source

from which any light, however feeble, may be derived.' Cooper v. State, 19 Texas, 449; Barnes v. State, 41 Texas, 342; Hamby v. State, 36 Texas, 523; Black v. State, 1 Texas Crim. App., 368. And in such cases the nature of the case, in many instances, demands a greater latitude in the presentation of the evidences of the circumstances than where a conviction is sought upon direct and positive testimony. Ballew v. State, 36 Texas, 98." In Burrell's case, 18 Texas, 732, it was held the agreement may be shown directly or by circumstances, such as his companionship with the principal actor, his knowledge of his purpose, and his own conduct before, at, and after the commission of the offense. Blain v. State, 33 Texas Crim. Rep., 236; Harris v. State, 31 Texas Crim. Rep., 411, and in McFaddin's case, 28 Texas Crim. App., 241, it is held parties are principals, or acting together, so long as any portion or object of the common design remains incomplete; in other words, until the full purpose and object of the conspiracy is consummated. In the case of Kirby v. State, 23 Texas Crim. App., 13, wherein the parties entered into an agreement to escape jail, and one of them killed the jailer, while the others were locked in their cells and rendered no aid at the time of the killing, it was held:

"Under such circumstances, and without direct proof of encouragement, the question is, could appellant be held and considered in law a principal in the crime committed by Cannon? It is declared that 'all are principals who are guilty of acting together in the commission of an offense' (Penal Code, art. 74), and 'all persons who shall engage in procuring aid, arms or means of any kind to assist in the commission of an offense whilst others are executing an unlawful act,' are principals. (Penal Code, art. 76.) And again, any person who advises or agrees to the commission of an offense, and who is present when the same is committed, is a principal thereto, whether he aids or not in the illegal act. (Penal Code, art. 78.)

"Thus it will be seen that, to render a party equally guilty and responsible with the real perpetrator, all that is required is that he be present, consenting, and that the act was the result of a common design. It is true his bare presence is not sufficient, nor is his failure to give alarm; neither is his inactive and supposed concealment of the offense. (Burrell v. State, 18 Texas, 713; Truitt v. State, 8 Texas Crim. App., 148; Tullis v. State, 41 Texas, 598; Ring v. State, 42 Texas, 282.) But such significant facts as his presence in connection with his companionship, his conduct at, before and after the commission of the act, are potent circumstances from which participancy may be inferred. (Id.) The true test is, did the parties act together, and was the act done in pursuance of a common design and purpose in which their minds had agreed? (Welsh v. State, 3 Texas Crim. App., 413; Wells v. State, 4 Texas Crim. App., 20; Scales v. State, 7 Texas Crim. App., 361; Corn v. State, 41 Texas, 301; Smith v. State, 21 Texas Crim. App., 107.)

"There can be no question as to the common design and conspiracy to effect an escape from jail, and the fact is also incontestable that the murder was committed by Cannon in pursuance of this common pur-

pose. But, while this is so, it is insisted that the conspiracy only extended to a purpose to confine Glazner in order that the escape might be accomplished—that the evidence fails to show that appellant and Brown ever contemplated, much less agreed to, his murder or the infliction of any bodily harm upon him; and that the fatal blows dealt him by Cannon causing death were the result of an independent act upon the part of Cannon without their knowledge or concurrence, and without the ability on their part even to prevent it.

"'The joint responsibility of parties for each other's misconduct rests on the principle that when an act is committed by a body of men engaged in a common purpose, such act is treated as if specifically committed by each individual. It should be observed, however, that while parties are responsible for collateral acts growing out of the general design, they are not responsible for independent acts growing out of the particular malice of individuals. Thus, if one party of his own head turn aside to commit a felony foreign to the original design, his companions do not participate in his guilt.' (Whart. on Hom., secs. 201, 202; Mercersmith v. State, 8 Texas Ct. App., 211; Stevenson v. State, 17 Texas Crim. App., 618.) But it is equally as well settled that 'all combining to commit an offense to which homicide is incident are principals in homicide. As where persons combine to stand by one another in a breach of the peace, with a general resolution to resist all opposers, and in the execution of their design a murder is committed, all of the company are equally principals in the murder, though at the time of the fact some of them were at such a distance as to be out of view, if the murder be in the furtherance of the common design. . . . Malice in such a killing may be inferred as a presumption of fact from the nature of the design and the character of the preparation; whether the deceased fell by the hand of the accused or otherwise is immaterial. . . . It is only where the causes leading to the homicide have no connection with the common object that the responsibility for such homicide attaches alone to its actual perpetrator.' (Whart. on Hom., sec. 338.) . . .

"If, as is clearly proven, part of the common design was to imprison Glazner within the jail, and detain him therein without his consent until the parties had effected their escape, then such detention would be unlawful and constitute what in our code is denominated 'false imprisonment' (Penal Code, art. 513), for which they would be liable to punishment by a fine not exceeding five hundred dollars and confinement in the county jail not exceeding one year. (Id., art. 518.) Mr. Bishop says, 'a man may be guilty of a wrong which he did not specifically intend, if it came naturally or even accidentally from some other specific or general evil purpose. When, therefore, persons combine to do an unlawful thing, if the act of one proceeding, according to the common plan, terminates in a criminal result, though not the particular result meant, are all liable.' (1 Bish. Crim. L., 7 ed., sec. 636.)

"In Mercersmith's case, 8 Texas Court of Appeals, supra, it was said where two persons go out for the common purpose of robbing a third

person, and one of them in pursuit of such common purpose kill such third person under such circumstances as to make it murder in him who does the act, then it is murder in the other. . . . Nor is it necessary that a common guilty purpose of resisting to the death any person who should endeavor to apprehend them must have been formed when the parties went out with the common design of committing the unlawful act, to render all principals in a murder by one of them whilst making such resistance.' "

As stated in the Serrato case, the court did not err in refusing to quash the indictment. The question was so thoroughly discussed in that case we will not do so here, and the other preliminary questions likewise present no error.

The fact that appellant secured arms when he went into the camp, carried them all the time he was with Captain Rangel's company, and was armed when arrested, was clearly admissible. It was a strong circumstance to show that while still in the United States, they were prepared to resist all those who might interfere with their purpose, and the nature of the resistance that would be offered.

Appellant's attorneys in this case are the same as those in the Serrato case, and in this case no question is briefed other than those acted on in the Serrato case, and if there is any other question in this case our attention has not been called to it, and after a study of it we find none that would present any error, and the judgment is affirmed.

*Affirmed.*

DAVIDSON, JUDGE.—This is a companion case to Serrato v. State, recently decided. I entered dissent in that case and may write later. I dissent also in this case.

[Rehearing denied June 18, 1914.—Reporter.]