## LEONARDO L. VASQUEZ v. THE STATE.

### No. 3181. Decided June 24, 1914.

**1.—Murder—Conspiracy—Rule Stated—Principals.**

When persons combine to engage in a breach of the peace with the general agreement to resist all opposition and in the execution of the design, a murder is committed by one or more of the parties, all of the company are equally principals in the murder.

**2.—Same—Specific Conspiracy—Charge of Court.**

Where it appeared from the record on appeal that the case was tried upon the theory that there was a specific conspiracy to kill the party named in the indictment, and defendant denied the same, the converse of the proposition as to such specific conspiracy should have been submitted in the court't charge, and the failure to do so was reversible error.

**3.—Same—Charge of Court—Definition of Conspiracy.**

When a conspiracy is once shown, the acts and conduct of each and all the conspirators are admissible in evidence against any one of them on trial, and where the evidence showed that the conspiracy was frustrated by arrest, the rule is the same, and no charge defining conspiracy is necessary unless the conspiracy is not admitted; however, it may be better practice to define conspiracy in all cases.

**4.—Same—Defensive Theory—Charge of Court.**

Where, upon trial of murder, the State relied upon a specific conspiracy and the defendant introduced evidence that he did not enter into the same, the court should have submitted to the jury his theory of the case, and a failure to do so was reversible error.

Appeal from the District Court of Bexar. Tried below before the Hon. W. S. Anderson.

Appeal from a conviction of murder; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*R. W. Hudson* and *Magus Smith* and *Jno. R. Storms* and *Edwin F. Vanderbiel* and *W. F. Ramsey* and *C. L. Black,* for appellant.—On question of the court's charge: Goodwin v. State, 58 Texas Crim. Rep., 496; Cecil v. State, 44 id., 450; Jones v. State, 57 id., 144; Armstead v. State, 48 id., 304; Dawson v. State, 38 id., 50.

*C. E. Lane,* Assistant Attorney General, for the State.

HARPER, JUDGE.—This is a companion case to that of J. A. Serrato, Lino Gonzales and Jesus Gonzales, recently decided by this court. In the other three cases the evidence clearly showed a conspiracy had been entered into by and between all the parties to gather near Carrizo Springs, in Dimmit County, and that they did gather there, and that at that point there had been accumulated arms, ammunition, bayonets, dynamite, bugles, and other munitions of war; that the flag under which they were to fight was in their possession, and that it was the purpose and intent of the parties to invade the Republic of Mexico to engage in

armed resistance to those in authority. By the facts and circumstances it was shown that the conspiracy embraced an agreement to overcome all resistance to their unlawful enterprise, and that Candelario Ortiz was killed because it became necessary or seemingly necessary to do so in order to accomplish the purpose for which they had banded themselves together. The State's evidence offered on the former trials fully supported all these contentions, but on this trial the State's case was not so well developed. A number of the witnesses used in the other cases were not placed on the stand, and of those who were introduced as witnesses much of their testimony was for some reason omitted, and in many respects the record in this case is much more incomplete than on the trials of the other defendants. This defendant was not one of the men who fired the shots that killed Ortiz. He admits he entered into the agreement to invade Mexico, and was along with the company aiding and assisting in the furtherance of that common enterprise, but he denies emphatically that the killing of Ortiz was embraced in the original agreement or conspiracy, and denies emphatically that he knew Ortiz was going to be killed, or that he had been killed until some time after the deed had been committed.

We want to say that in this record, and in the other records, the State's testimony did not show that there was a conspiracy formed, or an agreement made, to take the life of any particular man, or to take the life of Ortiz, by the entire company. Their agreement or conspiracy, if it be so termed, was to march into Mexico at all hazards and overcome all resistance; armed themselves for that purpose; that Ortiz was killed by Captain Rangel and three others in the furtherance of this common design and purpose, and each and all members of the company thereby became liable therefor, it being the law that when persons combine to engage in a breach of the peace, with a general agreement to resist all opposition, and in the execution of the design a murder is committed by one or more of the parties, all of the company are equally principals in the murder. Motive of the individual on trial may be inferred *from the nature of the design and character* of the preparation. The admitted purpose of the organization in this case, and the fact that they armed themselves with all character of implements calculated to inflict death, and take the evidence as heretofore introduced, the jury would be authorized to find that the killing of Ortiz, or any other man who got in their way, was within the compass of the original agreement, and was an act directly incident to and grew out of the common design of all. And this is the theory that the cases of Serrato and the two Gonzales were tried on. However, from the record now before us it is not apparent that this case was tried upon this theory, but rather the State seems to have tried this case upon the theory that there was a specific agreement or conspiracy entered into to kill Ortiz, and to prove that, relies on the fact that when Buck and Ortiz were kidnaped and Rangel informed that Ortiz was the man who informed on them, that Rangel then said that Ortiz would report on no other person; that they would kill him, and other similar remarks. However,

appellant denies hearing any such statement or hearing any such remarks, and says that he did not know that Ortiz was to be killed; that he was not present when he was killed, and did not know of it until some time thereafter, and when he learned of it he told the person informing him that it should not have been done, and if the State relied on a specific agreement to kill Ortiz, then the converse of this proposition should have been submitted to the jury; that is, if appellant did not enter into such an agreement, and did not know that Ortiz was to be killed, and did no act in furtherance of that design, he would not be guilty. However, under the evidence, we think the Serrato and Gonzales cases were tried upon the correct theory, and that is, all the company, as shown by all the testimony, had entered into a common design to commit an unlawful act—conspired to arm themselves and go from Dimmit County into Mexico to there engage in armed resistance to lawful authority, and embraced in this design was an agreement to overcome all opposition to the accomplishment of this design, and out of this common design the killing of Ortiz was a direct incident and grew out of it, rendering each and all of the parties who were along with Captain Rangel at the time and engaged in the common purpose, equally guilty with those who in fact fired the fatal shots, because according to the evidence offered in behalf of the State in the Serrato and Gonzales cases, it was evident he was killed to keep him from interfering with their common purpose—that is, to go to Mexico and engage in unauthorized warfare. However, it is equally true, that the testimony of this defendant, as did the testimony of the defendants in the other cases, tended to raise the issue that Ortiz may have been killed by Captain Rangel and the three other men upon an independent motive, foreign to and not incident to the common design of all, and in the Serrato and Gonzales cases the court submitted that issue to the jury, instructing them that if Ortiz was killed by one or more of the parties acting independently of the common design and not in furtherance thereof, and that the killing was not directly incident to and grew out of the common design, and without participation by him in the intent and design influencing those in committing the crime, he would not be guilty, and if the jury had a reasonable doubt on that issue, they should give the defendant the benefit of such doubt and acquit him. In the charge in this case no such instructions were given—in fact, defendant's defensive theory, whether the State relied on a specific design formed in the minds of all to kill Ortiz, or relied on the theory that they had all entered into a common design to commit an unlawful act, and the killing of Ortiz grew out of it, was not submitted to the jury, and this will of necessity work a reversal of the case.

The complaint that the court in his charge should have defined conspiracy, we do not think is well taken under the evidence in this case, for the defendant by his testimony, and all the testimony in the case, shows that a concerted purpose and design was entered into by and between all the parties named in the indictment. If the testimony did not show conclusively that there was such conspiracy, then the court

should have instructed the jury that he would not be bound by the words, acts and conduct of the other parties when he was not present, unless they believed the defendant had entered into a conspiracy or a combination in which two or more persons had agreed to commit a criminal or unlawful act, but if they found beyond a reasonable doubt such combination had been formed and defendant was a party thereto, then the acts and conduct of each and all the parties up to the time of their arrest could be considered by the jury in passing on the guilt or innocence of defendant. The rule being that when a conspiracy is once shown, then the acts and conduct of each and all the conspirators are admissible in evidence against any one of them on trial, said or done during the continuance of the conspiracy and until its final termination. In this case the end sought by the conspiracy was not accomplished, but frustrated by arrest, consequently the acts and conduct of the parties in furtherance of the common design are admissible up until the time of their arrest. Of course, as hereinbefore stated, if the conspiracy is not admitted fact, then conspiracy should be defined, and the issue submitted as to whether or not there was such conspiracy, and the jury properly instructed in regard thereto, and it might be best for the court in these cases to define conspiracy, and instruct the jury that before they would be authorized to find the defendant guilty as a principal they must believe beyond a reasonable doubt that defendant entered into a conspiracy with Captain Rangel and others to arm themselves to invade Mexico for an unlawful purpose, and that in pursuance of such common purpose and design Ortiz was killed, and that such killing was directly incidental to and grew out of the common design, and was committed in furtherance of the common purpose, even though at the time of the homicide some of them were at such distance as to be out of view. And then instruct them the converse of the proposition, that if the causes leading to the homicide had no connection with the common object and was not committed in pursuance of the common purpose, then those not participating in the killing would not be guilty.

Our views are so fully expressed in the Serrato and two Gonzales cases recently decided we do not deem it necessary to further discuss the questions herein raised, but refer the trial court to those cases and the law as herein stated for his guidance on another trial of this case.

On account of the failure of the court to submit appellant's defensive theory in any manner, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

DAVIDSON, JUDGE.—I agree to the conclusion but not all the reasoning.