CHARLES CLINE v. THE STATE.

No. 3653.  Decided June 25, 1915.

**1.—Murder—Companion Case.**

Where, upon trial of murder, the exceptions to the evidence adduced on the trial were ruled upon adversely in a companion case, except in one instance, they need not be passed upon, except in said instance.

**2.—Same — Evidence—Book — Industrial Workers of the World—Conspiracy.**

Where, upon trial of murder, the State sought to prove a conspiracy to kill the deceased, or that the killing of the deceased grew out of, and was incident thereto, it was reversible error to admit in evidence a certain book which showed that the defendant was a member of the Industrial Workers of the World, but which did not tend to prove a conspiracy, or that the deceased was killed in pursuance of such conspiracy, but would only tend to show that defendant was

a member of said organization; the punishment of the defendant being such that such evidence was injurious to defendant.

**3.—Same—Evidence—Co-conspirators, Declarations of.**

Where, upon trial of murder, the State's testimony showed that the defendant was one of the members of a party, or rather of a number of persons who had conspired together for an armed invasion into the Republic of Mexico, and that when defendant was arrested, stated after the killing of deceased, which grew out of such conspiracy, that he had been captured and forced to go along with said party and had escaped from them as soon as he could, there was no error in admitting evidence, in rebuttal thereto, the conduct of the co-conspirators, after defendant was arrested, and to show his presence when part of the offense was committed; however, the court should have submitted a charge on defendant's said exculpatory statement.

**4.—Same—Independent Design—Principals—Charge of Court.**

Where, upon trial of murder, the State attempted to show that the defendant was a member of a certain party to a conspiracy to invade the Republic of Mexico, out of which grew the killing of the deceased, or was incident thereto, the court should have submitted a requested charge that if the jury had a reasonable doubt, under the evidence, that such killing was upon an independent impulse of the party or parties who did the killing, and not in pursuance of the original agreement with the defendant, to acquit him; the evidence raising this issue.

**5.—Same—Conspiracy—Charge of Court.**

Where, upon trial of murder, the indictment alleged that the defendant with others killed the deceased, and the State introduced evidence of a conspiracy, the court should have instructed the jury that unless they found the defendant had entered into a conspiracy to take the life of the deceased, or to do an unlawful act out of which grew the killing of the deceased, and was incident thereto, etc. they could not convict the defendant.

Appeal from the District Court of Bexar. Tried below before the Hon. W. S. Anderson.

Appeal from a conviction of murder; penalty, life·imprisonment in the penitentiary.

The opinion states the case. See Serrato v. State, 74 Texas Crim. Rep., 413.

*Haltom & Haltom,* for appellant.—On question of refusing requested charge on independent impulse of co-conspirator: Guffee v. State, 8 Texas Crim. App., 187; Mercersmith v. State, 8 id., 211; Walker v. State, 16 S. W. Rep., 548; Criner v State, 53 S. W. Rep., 873.

On question of admitting in evidence paper documents found in possession of a person other than defendant: Cases supra.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, JUDGE.—This is a companion case to that of Serrato, two Gonzales cases, 74 Texas Crim. Rep., 458 and 468, and Martinez case reported in 75 Texas Crim. Rep., 416, 171 S. W. Rep., beginning on page 1133, and the Vasquez case, reported in 74 Texas Crim. Rep., 491 171 S. W. Rep., 1160.

In this case appellant was adjudged guilty, and his punishment assessed at imprisonment for life in the penitentiary. Some of the ques-

tions raised in those cases are presented in this record, but we do not deem it necessary to discuss them. All the evidence adduced on the trial, in our opinion, was admissible except the book introduced in evidence, which showed that he was a member of the I. W. W. This bill shows:

"The district attorney offered in evidence portions of a book shown to have been in possession of defendant, as follows:

"On front cover of book: 'Gen. No. 6172 (bearing stamp) Industrial Workers of the World. Label. I. W. W. Universal. Name, Chas. Cline. Address, St. Louis, Mo.'

"The book also having stamped on the inside of front cover, the following: 'Industrial Workers of the World, I. W. W., St. Louis Industrial Union No. 84. July 7th, 1905. St. Louis, Mo.'

"And printed upon the first page of the book: 'Industrial Workers of the World—Official Membership Book.' (Stamped) 'Industrial Workers of the World. General I. W. W. Administration.

"'The member is entitled to work in any industry of the organization where employment is obtained when stamps are affixed, showing the member is in good standing. To be in good standing a member must be paid for current month.'

"And printed on the second page, the following:

### 'LABOR IS ENTITLED TO ALL IT PRODUCES.'

'No money should be received without acknowledgment in this book. Members must see that the financial secretary places a stamp in the book for each month for which dues or assessments are paid.'

"Issued by Authority of the General Executive Board of the I. W. W. Vincent St. John, General Secretary and Treasurer, 518 Cambridge Bldg., 56 5th Ave., Chicago, Ill.

"And printed on the last page of the book the following:

### " 'THE NEW PREAMBLE.'

" 'The working class and the employed class have nothing in common. There can be no peace so long as hunger and want are found among millions of working people and the few, who make up the employing class, have all the good things of life.

" 'Between these two classes a struggle must go on until the workers of the world organize as a class, take possession of the earth and the machinery of production, and abolish the wage system.

" 'We find that the centering of the management of industries' into fewer and fewer hands make the trade unions unable to cope with the ever growing power of the employing class.

" 'The trade unions foster a state of affairs which allows one set of workers to be pitted against another set of workers in the same industry, thereby helping defeat one another in wage wars. Moreover, the trade unions aid the employing class to mislead the workers into the belief that the working class have interest in common with their employers.

" These conditions can be changed and the interest of the working class upheld by an organization formed in such a way that all its members of any one industry, or in all industries, if necessary, cease work whenever a strike or lockout is on in any department thereof, thus making an injury to one an injury to all.

" 'Instead of the conservation motto: A fair day's wages for a fair day's work, we must inscribe in our banner the revolutionary watchword: Abolition of the wage system.'

" 'It is the historic mission of the working class to do away with capitalism. The army of production must be organized. not only for the every-day struggle with capitalists, but also to carry on production when capitalists shall have been overthrown. By organizing industrially we are forming the structure of the new society within the shell of the old.' "

Appellant objected to the introduction of this testimony on the ground that it does not tend to prove a conspiracy, nor that Ortiz was killed in pursuance of such conspiracy, and could be used only to influence the minds of the jury by reason of the revolutionary ideas set out in the book. We are inclined to think the objections tenable, and the court erred in admitting this book in evidence. That appellant was a member of the "I. W. W." would not tend to show that he had met with his co-defendants at the Capones ranch for any illegal purpose, nor the preamble show that the mission of appellant and those with him was to do any act in violation of law. The "I. W. W." is not shown to have been furthering any movement to invade Mexico. This membership card has no connection with the "manifesto" introduced. The manifesto clearly shows why appellant and his co-defendants had gathered at the ranch and why they were going to Mexico, and was admissible for that purpose, and the court did not err in so holding, but the membership book in the "I. W. W." would not have a tendency to so show, but would have a tendency to show that appellant was a member of an organization, the purposes of which a considerable portion of the citizens of the United States do not endorse. Neither can we say the introduction of this book was not hurtful to appellant. He was sentenced to life imprisonment, while in those cases that have heretofore been appealed, and in which the "I. W. W." membership was not introduced, the defendants receive only from five to twenty years imprisonment in the penitentiary.

Appellant also contends that the court erred in admitting the conduct of the conspirators after appellant was arrested. We do not think so. Ortiz had been killed prior to this time, and this testimony was admissible as tending to show why appellant and the others had banded together, and the extent of their agreement or conspiracy. However, when arrested appellant told the officers he "had been captured and forced to go along with the others, and he had escaped from them as soon as he could." Appellant was arrested separate and apart from the others, and a day prior to the arrest of the others. We think the evidence is ample to show the falsity of this explanation of his presence

with the others at the time Buck and Ortiz were captured; at the time Ortiz was killed, and at the time Buck was released on a compromise agreement. But though the record would amply support a finding that the explanation of his presence with the others was false, yet as this court has often said, the jury are the judges of the facts, and as the State introduced the statements of appellant at the time he was arrested, which, among other things, included this exculpatory statement, appellant was entitled to have the jury instructed that unless the State by the evidence had shown the falsity of this exculpatory statement, appellant would be entitled to be acquitted.

We also think the court should have given the following special charge requested by appellant: "Gentlemen of the Jury: If you believe from the evidence that J. M. Rangel, Eugennio Alzalde, and others, or other person killed the deceased, Candelario Ortiz, with a gun, as charged in the indictment; but if you further believe, or if you have a reasonable doubt that such killing was upon an independent impulse of the party or parties who did the killing, if same was done, and not in pursuance of an agreement with the defendant now on trial, then you shall acquit the defendant, and by your verdict say not guilty." The court may have thought the evidence raising such an issue was rather meager, and it is under the evidence in this case, for the evidence of Mr. Buck would tend strongly to show that from the remarks of appellant made at the time they captured him and Ortiz it was the intention to kill them both, and appellant was aware of that fact, yet every affirmative issue raised by the evidence in behalf of the person on trial, which if true would entitle him to an acquittal, should be submitted to the jury for their determination.

The charge on conspiracy should have gone further and instructed the jury, that unless they found appellant had entered into a conspiracy to take the life of Ortiz, or entered into a conspiracy to do an unlawful act, and the killing of Ortiz grew out and was incident to an endeavor to commit such act or was done in furtherance of the accomplishment of the common design, of all to which appellant was a party, he would not be guilty.

The other grounds complained of we think present no error.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*