**UNKNOWN HEIRS OF THOMAS et al. v. HARRIS COUNTY HOUSTON SHIP CHANNEL NAVIGATION DIST.    (No. 1664.)**

Court of Civil Appeals of Texas. Beaumont. May 5, 1928.

Rehearing Denied May 16, 1928.

**1. Deeds** ⊜⇒207—**Open assertion of title as against heirs authorized finding that ancestor had conveyed title.**

Where title has been openly and notoriously asserted as against heirs of one holding title in his lifetime, court or jury is authorized to find that such title passed by deed from ancestor, and evidence need not conclusively establish that such a grant was made, but need only lead to the conclusion that conveyance might have been executed.

**2. Adverse possession** ⊜⇒31—**Heirs of one originally holding title were chargeable as matter of law with notice of adverse claim of persons paying taxes and filing deeds to property received under partition proceeding recognized by such heirs.**

Where claim of one receiving property in partition proceedings was asserted by her and her grantees by payment of taxes, filing of deeds, and continuous claim to land, on which town was laid out and partly built, heirs of one who formerly held title were chargeable as matter of law with notice of adverse claim in proceedings to establish lost deed from ancestor, where such heirs recognized partition, and took share of property partitioned.

**3. Deeds** ⊜⇒207—**Evidence held to sustain finding as to execution of deed alleged to have been lost.**

In suit in trespass to try title, in which plaintiffs pleaded lost deed from defendants' an-

cestor, finding of existence of lost grant held authorized, where land was described in inventory of alleged grantee's estate, and was granted plaintiff's predecessor in title on partition of estate's property, and was held by her and her grantees continuously under claim of title notoriously asserted by payment of taxes and filing deeds, and where it did not appear that either defendants' ancestor or his heirs had possession of property or asserted any claim thereto.

**4. Evidence** ⊜⇒460(4)—**Description of land partitioned as 500 acres "purchased of I. B. February 24, 1847, being the homestead of decedent," held ambiguous and subject to explanation.**

In suit in trespass to try title, description of land awarded to plaintiff's predecessor in title in partition decree as "500 acres of land, being the 500 acres purchased of I. B. February 24, 1847, being the homestead of decedent," held ambiguous and subject to explanation by oral testimony, to establish lost deed to identical property from defendants' ancestor.

**5. Trespass to try title** ⊜⇒41(3)—**Evidence required finding that tract described in partition decree was property conveyed to defendants' ancestor.**

In suit in trespass to try title court's finding that property described in partition decree under which plaintiff claimed as "500 acres of land, being the 500 acres purchased of I. B. February 24, 1847, being the homestead of decedent," was identical with 500-acre tract sold by the grantor mentioned to defendants' ancestor, held proper, in view of description in inventory of deceased's estate and testimony identifying date of sale; it being claimed that deceased was the grantee.

**6. Husband and wife** ⊜⇒6(2)—**Husband, receiving title during wife's lifetime, could convey property without wife's joinder.**

Where title was in husband several years before wife's death, he could convey property prior to her death by himself without her joining.

**7. Deeds** ⊜⇒207—**Alleged failure of plaintiff claiming under lost deed to prove grantee's payment of taxes held not fatal to proof of existence of deed.**

In suit in trespass to try title, in which plaintiff relied on lost deed from defendants' ancestor, failure to prove payment of taxes on property by alleged grantee under whom plaintiff claimed did not prevent plaintiff's recovery, where evidence failed to show that defendants' ancestor was in possession or actual assertion of claim to land subsequent to the execution of deed to him.

**8. Deeds** ⊜⇒207—**Evidence which failed to show defendants' ancestor paid taxes or occupied or claimed land raised issue of nonclaim in suit involving issue as to existence of lost deed.**

In suit in trespass to try title, in which plaintiff relied on lost deed from defendants' ancestor, evidence which failed to show that defendants' ancestor paid taxes or was in posses-

sion of, or asserting claim to, the land, was sufficient to raise issue of nonclaim, which, followed by nonclaim of heirs, raised issue of grant to person under whom plaintiff claimed.

**9. Deeds ☞207—Failure to prove that grantee claimed land held not to prevent finding that alleged lost deed had been executed.**

In suit in trespass to try title, in which plaintiff relied on lost deed from defendants' ancestor, absence of affirmative evidence that alleged grantee claimed land during lifetime of defendants' ancestor, and that they had notice of the claim, and acquiesced therein, *held* not to prevent finding of lost deed from facts and subsequent dealings and assertion of claim by grantee's heirs and nonclaim by grantor's heirs after his death.

**10. Deeds ☞207—Probability of execution of alleged lost deed held sufficient on trespass to try title in which plaintiff relied thereon.**

In trespass to try title, in which plaintiff relied on lost deed, evidence need not conclusively establish the deed, but need only lead to the conclusion that conveyance might have been made.

**11. Deeds ☞207—Description in deeds to adjoining property, referring to grantee's lands, held some evidence of grantee's claim under lost deed.**

Deeds to adjoining property, in which description referred to lands as bounded by lands of alleged grantee under lost deed, *held* to constitute some evidence that grantee asserted claim to land in suit by one claiming under him in trespass to try title.

**12. Partition ☞95—Description in partition decree held not void for failure to designate county and state.**

Description of land in partition decree as "500 acres of land, being the 500 acres purchased of I. B. February 24, 1847, being the homestead of decedent," *held* not void for failure to give name of county or state in which land was located in suit in trespass to try title, where evidence fully identified land.

Appeal from District Court, Harris County; Roy F. Campbell, Judge.

Suit by the Harris County Houston Ship Channel Navigation District against the unknown heirs of Ezekiel Thomas, the unknown heirs of E. B. Birdsall, and others. From an adverse decree, certain of the parties proceeded against as defendants appeal. Affirmed.

J. R. Hill and P. Harvey, both of Houston, for appellants.

W. J. Coulson, Ewing Werlein, and Elbert Roberts, all of Houston, for appellee.

WALKER, J. This was a suit in trespass to try title by appellee, Harris County Houston Ship Channel Navigation District, against the unknown heirs of Ezekiel Thomas, the unknown heirs of Isaac Batterson, the unknown heirs of Lewis Birdsall, the unknown heirs of E. B. Birdsall, the unknown heirs of Maurice

L. Birdsall, the unknown heirs of Jane Harris, and many other defendants. Appellee specially pleaded its title from and under the original grantee, claiming under a regular chain of title, but admitting a lost deed from Lewis Birdsall, Jr., and E. B. Birdsall to M. L. Birdsall. This deed, with its execution and delivery, its loss and search to find it, was specially pleaded. In addition, appellee specially pleaded the circumstances relied upon to establish its execution, and also specially pleaded estoppel and ten-year limitation. On trial to the court without a jury, judgment was in favor of appellee against all the defendants for the land in controversy. In support of its judgment, the court found a deed from Lewis Birdsall, Jr., and E. B. Birdsall to M. L. Birdsall, thus completing appellee's chain of title. The court also found in favor of the issues of estoppel and limitation. Many of the defendants filed disclaimers. As we understand this appeal, it is only by those defendants claiming under Mary Birdsall and John S. Birdsall, children of E. B. Birdsall. However, this point is not material, and certain of appellants may be claiming under the heirs of Lewis Birdsall, Jr., or of Mrs. Van Tuyl, a daughter of Lewis Birdsall, Sr., and a sister of the other Birdsalls. Appellee advances appropriate assignments and propositions challenging the court's conclusions of fact as being without support in the evidence. As we think the evidence fully sustains the finding of the court of the deed from Lewis Birdsall, Jr., and E. B. Birdsall to their brother, M. L. Birdsall, we pretermit a discussion of the theories of estoppel and limitation.

The land in controversy is a part of the league of land granted to Ezekiel Thomas by the Mexican government in 1824, situated on Buffalo bayou in the city of Houston, Harris county, Tex., and at this time of very high value. By deed dated 3d day of June, 1837, the curator of the succession of Ezekiel Thomas, deceased, sold to Isaac Batterson 1,000 acres of the Ezekiel Thomas league. The land in controversy is a part of this 1,000 acres. By deed dated the 24th day of November, 1837, Isaac Batterson sold to Lewis Birdsall, Sr., 500 acres of land on the Ezekiel Thomas, being a part of the 1,000 acres just described, which 500 acres included the land in controversy. By deed dated the 24th day of October, 1838, Lewis Birdsall, Sr., conveyed to his two sons Lewis Birdsall, Jr., and E. B. Birdsall the land on the Ezekiel Thomas league previously sold to him by Isaac Batterson. We gather from the record that Lewis Birdsall, Sr., had five children, all of whom survived him, to wit, Lewis Birdsall, Jr., E. B. Birdsall, M. L. Birdsall, and his daughters, Mrs. Van Tuyl and Mrs. Jane Harris, the wife of D. W. Clinton Harris. E. B. Birdsall died in 1843, and his wife

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

died in 1842, leaving surviving them two minor children of tender years, a daughter, Mary Birdsall, and a son, J. S. Birdsall. Administration was had on the estate of M. L. Birdsall, who died in 1848. In 1848, D. W. C. Harris, the husband of Jane Harris, on petition filed by him, was appointed administrator of the estate of M. L. Birdsall. An inventory of this estate filed on the 2d day of February, 1848, listed, among other property, the following: "500 acres of land on Buffalo bayou bot. of Isaac Batterson with improvements."

No other land on the Ezekiel Thomas was inventoried as a part of this estate. Upon the filing of this inventory, Lewis Birdsall, Jr., one of the grantees from Lewis Birdsall, Sr., to the land above described, filed his petition in this administration praying for a partition of the estate of M. L. Birdsall among the heirs. All of the heirs of M. L. Birdsall were made parties to this proceeding and service on them duly had. At the March term, 1852, Francis R. Lubbock was appointed guardian ad litem of John S. Birdsall and Mary Birdsall, the two minor children of E. B. Birdsall, and at that term decree of partition was entered, commissioners of partition appointed, the report of the commissioners made, filed, and approved, and partition of the estate made among the heirs. By this report Jane Harris was decreed, among other property: "500 acres of land, being the 500 acres purchased of Isaac Batterson February 24, 1847, being the homestead of decedent." Claiming under this partition, Jane Harris appropriated and afterwards sold the 500 acres on the Ezekiel Thomas league conveyed by Isaac Batterson to Lewis Birdsall, Sr., and by him to his two sons, Lewis Birdsall, Jr., and E. B. Birdsall. Appellee holds the title to the land in controversy under the grantees of Jane Harris by and through a regular chain of transfers.

The following additional facts were taken from the record in support of the court's conclusion that Lewis Birdsall, Jr., and E. B. Birdsall conveyed the 500 acres of land of the Ezekiel Thomas league to their brother, M. L. Birdsall.

(a) The following tax renditions were shown by certificate from the comptroller's office, covering land on the Ezekiel Thomas league: 1837, Maurice Birdsall, 483; 1838, no assessment record; 1839, no assessment record; 1840, M. L. Birdsall, 670; 1840, Maurice L. Birdsall, 738; 1842, not assessed to M. L. Birdsall; 1843, not assessed to M. L. Birdsall; 1844, Morris L. Birdsall, 2,351; 1845, Morris L. Birdsall, 2,351; 1846, Morris L. Birdsall, 460; 1847, not assessed to M. L. Birdsall; 1848, not assessed to M. L. Birdsall; 1849, not assessed to M. L. Birdsall; 1850, not assessed to Birdsall or Harris; 1851, D. W. C. Harris and 2 bros. for estate of Birdsall, 500; 1852, D. W. C. Harris for estate of Birdsall, 500; 1853, D. W. C. Harris for estate of M. L. Birdsall, 500; 1854, D. W. C. Harris for estate of Birdsall, 500; 1855, D. W. C. Harris for estate of Birdsall, 500; 1856, D. W. C. Harris for Jane Harris, 500; 1857, D. W. C. Harris estate of Birdsall, agent of Jane Harris (no rendition); 1858, D. W. C. Harris, agent for M. L. Birdsall, 500; 1859, D. W. C. Harris, agent for M. L. Birdsall, 500; 1860, not assessed to Harris or Birdsall; 1861, not assessed to Harris or Birdsall.

(b) None of the heirs of M. L. Birdsall, E. B. Birdsall, Lewis Birdsall, Jr., or Mrs. Van Tuyl or their grantees ever asserted any claim to this land hostile to the claim of Jane Harris and her grantees prior to the institution of this suit by appellee in 1925, and then they knew of their claim only by the information given by the filing of the suit.

(c) All the parties to the administration of the estate of M. L. Birdsall and their heirs and grantees recognized the validity of the partition of that estate, accepted and appropriated the land as decreed to them respectively by the terms of the partition decree, and, prior to the institution of this suit and their appearance herein, none of them ever advanced the claim that the 500 acres sold by Isaac Batterson to Lewis Birdsall, Sr., was not a part of the estate of M. L. Birdsall.

(d) While the heirs of E. B. Birdsall were nonresident minors at the time of the partition, they were represented in the partition by able counsel. The petition for partition was filed by their uncle and cograntee with their father, and, after reaching their majority, they recognized the validity of the partition proceeding by appropriating and selling lands decreed to them at a time when the grantees of Jane Harris were in active assertion of the claim now advanced by appellee.

(e) Jane Harris and her grantees have claimed the land continuously, paid taxes thereon, and filed for record their deeds under which they have been asserting their claims. Under the Jane Harris deed, a town has been laid out and partly built on the 500 acres appropriated by Jane Harris under the partition. More than 100 deeds are in evidence in appellee's chain of title to the tract of land in controversy. No effort was made to show the chain of transfers to the balance of the 500 acres.

(f) The 500 acres claimed by Jane Harris in the partition of the estate of M. L. Birdsall was known during his lifetime as the land of M. L. Birdsall.

(g) In the administration of the estate of Isaac Batterson, who purchased the 1,000 acres in the Ezekiel Thomas league (there being in fact 1,080 acres in this tract), the 580 acres of the Ezekiel Thomas league remaining after the sale of the 500 acres to Lewis Birdsall was sold under the following description:

"Being bounded south by Buffalo bayou, west by land belonging to Ezekiel Thomas' heirs as aforesaid, north by the northern boundary of the league, and east by land belonging to Maurice Birdsall."

This 580 acres was subsequently sold on June 2, 1844, by the following description:

"Lying and being situated on the north bank of Buffalo bayou out of a league of land granted to Ezekiel Thomas, bounded on the north by the boundary line of league, east by lands of Maurice L. Birdsall, south by Buffalo bayou, and west by the lands of the heirs of said Thomas."

And again, by deed dated September 19, 1854, this Batterson tract was described as follows:

"On the north side of Buffalo bayou by a portion of the headright of Ezekiel Thomas commencing at the southwest corner of M. L. Birdsall's survey."

(h) While M. L. Birdsall at one time paid taxes on 2,351 acres on the Ezekiel Thomas league before his death, this rendition was reduced to 460 acres, afterwards rendered by his administrator as 500 acres.

[1-3] On these facts the presumption of the deed from Lewis Birdsall, Jr., and E. B. Birdsall to M. L. Birdsall has full support. The rule governing Texas courts in finding a grant or lost deed was thus stated by the Galveston Court of Civil Appeals in Fowler v. Texas Exploration Co., 290 S. W. 818, and quoted with approval by us in Miller-Vidor Lumber Co. v. Schreiber, 298 S. W. 154 (writ of error refused in both cases):

"Where title has been openly and notoriously asserted as against heirs of one who held title in his lifetime and who must have known of adverse claim and assertion of title, court or jury is authorized to find that such title had passed by deed or otherwise from ancestor, and evidence need not conclusively establish that grant was made, but need only lead to conclusion that conveyance might have been executed."

In this case the claim of Jane Harris and those holding under her was so notoriously asserted that the Birdsall heirs and those claiming under them were visited as a matter of law with notice thereof. The claim of Jane Harris and her grantees is consistent with the finding of the deed in M. L. Birdsall. The nonclaim of the other heirs of M. L. Birdsall is consistent with that finding. The circumstances of this case lead to the conclusion that conveyance might have been executed. In fact, every circumstance offered in this case points to the existence of such a deed, and refutes the claim of appellants. We know of no reported case where the circumstances more strongly point to the existence of a lost deed than the facts here. Appellants' assignments against these facts are as follows:

[4, 5] (1) That the description of the land awarded to Jane Harris in the partition decree: "500 acres of land, being the 500 acres purchased of Isaac Batterson February 24, 1847, being the homestead of decedent," was not ambiguous, but, as a matter of law, referred to a certain 500 acres purchased by M. L. Birdsall from Isaac Batterson, thereby excluding the 500 acres sold by Isaac Batterson to Lewis Birdsall, Sr., and, since the land in controversy is a part of the Lewis Birdsall, Sr., purchase, it was not given to Jane Harris in the partition of the estate of M. L. Birdsall. That is not a proper construction of the evidence in question. This description was ambiguous, and subject to explanation by oral testimony. The record disclosed only 1,080 acres of the Ezekiel Thomas owned by Isaac Batterson, of which he sold 500 acres to Lewis Birdsall, Sr., which included the land in controversy. The location on the ground of the 1,080-acre Isaac Batterson tract and of the 500 acres sold by him to Lewis Birdsall, Sr., and of the land in controversy as a part of that 500 acres, was shown beyond controversy. By the most solemn declarations, the Lewis Birdsall, Sr., 500-acre tract was described in the old deeds given in section (g), supra, as the property of M. L. Birdsall. At his death, M. L. Birdsall owned only 500 acres on the Ezekiel Thomas, which by the description given in the inventory and in the partition was identified as being the land sold by Isaac Batterson on November 24, 1837, to Lewis Birdsall. That was the date of the deed to Lewis Birdsall from Isaac Batterson to the 500 acres. This testimony was not only sufficient to support, but also as a matter of law to impel, the conclusion made by the trial court that the 500-acre tract awarded to Jane Harris was the 500 acres sold by Isaac Batterson to Lewis Birdsall.

[6] (2) Appellants say a deed cannot be presumed out of E. B. Birdsall, because this was the community property of him and his wife. This is not a sound conclusion. The title was in him four years before the death of his wife. He, by himself or joined with her, could have conveyed the property to M. L. Birdsall prior to her death.

[7-10] (3) They say a deed cannot be presumed into M. L. Birdsall because there was no evidence that he paid taxes on it during the lifetime of Mrs. E. B. Birdsall. The evidence was sufficient to support such a conclusion. The tax renditions on the Ezekiel Thomas show the following payments by him in 1840: "1840, M. L. Birdsall, 670; 1840, Maurice L. Birdsall, 788." But it was not necessary for appellee to make that proof to support the court's judgment. The evidence failed to show that E. B. Birdsall or his wife were in possession or actual assertion of a claim to this land subsequent to the execution of the deed to them, other than the delivery of the deed. They did not render the land for taxes, and, while there was no evidence that they did not live on the land, there was no evidence that they did live on it.

This state of the record, with other circumstances reflected by this opinion, was sufficient to raise the issue of a nonclaim by them during their lifetime, which, followed by the nonclaim of their heirs, raised the issue of a grant from E. B. Birdsall to M. L. Birdsall. Appellants are wrong in their proposition that a deed from E. B. Birdsall to M. L. Birdsall cannot be found except upon affirmative evidence that M. L. Birdsall claimed the land during the lifetime of E. B. Birdsall and his wife, and that they had notice thereof and acquiesced therein. On the showing that appellee and its privies had been openly and notoriously asserting title against the heirs of Lewis Birdsall and E. B. Birdsall, who held the title in their lifetime, and that these heirs must have known of this adverse claim and assertion of title, the court was authorized to find or presume a deed out of their ancestor. As shown by the citation from the Fowler Case, supra, the evidence need not conclusively established the grant, but only lead to the conclusion that the conveyance might have been made. As held by Frugia v. Trueheart, 48 Tex. Civ. App. 513, 106 S. W. 742, the deed may be presumed upon a showing that it was more reasonably probable that it was made than that it was not. The affirmative facts to support that conclusion may all arise after the death of the ancestor, and grow out of subsequent dealings and assertion of claim by the claimant and nonclaim by the heirs. That E. B. Birdsall and his wife were not shown to have notice of the claim of M. L. Birdsall was only a circumstance to be considered by the court, and not a bar to the court's conclusion.

[11] (4) Appellants misconstrue the record when they say "there is no evidence that M. L. Birdsall ever asserted any claim to the land." The evidence in the old deeds given in paragraph (g), supra, is a complete answer to this proposition. The fact that Lewis Birdsall, Jr., asserted no claim to this land, but invoked the jurisdiction of the probate court to partition it among the heirs was a circumstance in support of the claim of M. L. Birdsall.

[12] (5) The description of the land awarded to Jane Harris in the partition of the estate of M. L. Birdsall was not void on the ground that it did not give the name of the county or state in which it was located. This defect was met by the other evidence fully identifying the land as being a part of the Ezekiel Thomas, situated in Harris county, Tex.

(6) Arguing that the evidence was insufficient to raise the issue of a grant from Lewis Birdsall, Jr., and E. B. Birdsall to M. L. Birdsall, appellants say that the probate court was without jurisdiction to partition the 500 acres in question, since it was not a part of the estate in administration; and, since the 500 acres claimed was not a part of the M. L. Birdsall estate, the proceedings in probate did not visit Lewis Birdsall, Jr., who was at that time a nonresident, with notice that his sister was claiming his land under the probate decree. If we are correct in our conclusion that the 500 acres awarded to Jane Harris was the 500 acres deeded by Batterson to Lewis Birdsall, Sr., and by him to Lewis Birdsall, Jr., and E. B. Birdsall, this proposition falls, and requires no further discussion.

As we understand appellants' briefs filed herein, what we have said disposes of all their criticism against the court's conclusion of fact. The judgment of the trial court is affirmed.