MASTERSON et al. v. HARRIS COUNTY HOUSTON SHIP CHANNEL NAV. DIST. (No. 1041—5234.)

Commission of Appeals of Texas, Section B. April 10, 1929.

Hill & Harvey and W. L. Hill, all of Houston, for plaintiffs in error.

Roberts, Montieth, Baring & Wilson, W. J. Coulson, Ewing Werlein, and Thos. H. Ball, all of Houston, for defendant in error.

SHORT, P. J. This suit was brought and tried in one of the district courts of Harris county, wherein the defendant in error was plaintiff and the plaintiffs in error, here, with others, were made defendants. Upon a trial, judgment was rendered in favor of the defendant in error against all the defendants. It involves the title to 500 acres of land, a part of the Ezekiel Thomas League Survey, and the action was in the form of trespass to try title. The defendant in error based its claim of title, among other things, on an allegation of a presumptive grant from E. B. Birdsall, in whom the title was in part, to Maurice L. Birdsall. These plaintiffs in error, here, prosecuted an appeal to the Court of Civil Appeals, assailing the judgment of the trial court on the ground that there is no evidence in the record to raise the issue of the presumption of a grant. The Court of Civil Appeals at Beaumont, in its opinion, held that there was such evidence. 6 S.W. (2d) 396.

While there are seven assignments of error in the application for the writ of error, each and all of them relate to this one question as to the sufficiency of the evidence to sustain the judgment of the Court of Civil Appeals. Whether there is relevant testimony in the record sufficient to establish, as a fact, the presumption of a grant being the only question involved in the application, it is necessary that a statement of the case and the findings of fact by the Court of Civil Appeals be considered. This statement and the findings of fact, by the Court of Civil Appeals, are as follows:

"This was a suit in trespass to try title by appellee, Harris County Houston Ship Channel Navigation District, against the unknown heirs of Ezekiel Thomas, the unknown heirs of Isaac Batterson, the unknown heirs of Lewis Birdsall, the unknown heirs of E. B. Birdsall, the unknown heirs of Maurice L. Birdsall, the unknown heirs of Jane Harris, and many other defendants. Appellee specially pleaded its title from and under the original grantee, claiming under a regular chain of title, but admitting a lost deed from Lewis Birdsall, Jr., and E. B. Birdsall to M. L. Birdsall. This deed, with its execution and delivery, its loss and search to find it, was specially pleaded. In addition, appellee specially pleaded the circumstances relied upon to establish its execution, and also specially pleaded estoppel and ten-year limitation. On trial to the court without a jury, judgment was in favor of appellee against all the defendants for the land in controversy. In support of its judgment, the court found a deed from Lewis Birdsall, Jr., and E. B.

Birdsall to M. L. Birdsall, thus completing appellee's chain of title. The court also found in favor of the issues of estoppel and limitation. Many of the defendants filed disclaimers. As we understand this appeal, it is only by those defendants claiming under Mary Birdsall and John S. Birdsall, children of E. B. Birdsall. However, this point is not material, and certain of appellants may be claiming under the heirs of Lewis Birdsall, Jr., or of Mrs. Van Tuyl, a daughter of Lewis Birdsall, Sr., and a sister of the other Birdsalls. Appellants advance appropriate assignments and propositions challenging the court's conclusions of fact as being without support in the evidence. As we think the evidence fully sustains the finding of the court of the deed from Lewis Birdsall, Jr., and E. B. Birdsall to their brother, M. L. Birdsall, we pretermit a discussion of the theories of estoppel and limitation.

"The land in controversy is a part of the league of land granted to Ezekiel Thomas by the Mexican government in 1824, situated on Buffalo bayou in the city of Houston, Harris county, Tex., and at this time of very high value. By deed dated 3d day of June, 1837, the curator of the succession of Ezekiel Thomas, deceased, sold to Isaac Batterson 1,000 acres of the Ezekiel Thomas league. The land in controversy is a part of this 1,000 acres. By deed dated the 24th day of November, 1837, Isaac Batterson sold to Lewis Birdsall, Sr., 500 acres of land on the Ezekiel Thomas, being a part of the 1,000 acres just described, which 500 acres included the land in controversy. By deed dated the 24th day of October, 1838, Lewis Birdsall, Sr., conveyed to his two sons, Lewis Birdsall, Jr., and E. B. Birdsall, the land on the Ezekiel Thomas league previously sold to him by Isaac Batterson. We gather from the record that Lewis Birdsall, Sr., had five children, all of whom survived him, to wit, Lewis Birdsall, Jr., E. B. Birdsall, M. L. Birdsall, and his daughters, Mrs. Van Tuyl and Mrs. Jane Harris, the wife of D. W. Clinton Harris. E. B. Birdsall died in 1843, and his wife died in 1842, leaving surviving them two minor children of tender years, a daughter, Mary Birdsall, and a son, J. S. Birdsall. Administration was had on the estate of M. L. Birdsall, who died in 1848. In 1848, D. W. C. Harris, the husband of Jane Harris, on petition filed by him, was appointed administrator of the estate of M. L. Birdsall. An inventory of this estate filed on the 2d day of February, 1848, listed, among other property, the following: '500 acres of land on Buffalo bayou bot. of Isaac Batterson with improvements.' "No other land on the Ezekiel Thomas was inventoried as a part of this estate. Upon the filing of this inventory, Lewis Birdsall, Jr., one of the grantees from Lewis Birdsall, Sr., to the land above described, filed his petition in this administration praying for a

partition of the estate of M. L. Birdsall among the heirs.

"All of the heirs of M. L. Birdsall were made parties to this proceeding and service on them duly had. At the March term. 1852, Francis R. Lubbock was appointed guardian ad litem of John S. Birdsall and Mary Birdsall, the two minor children of E. B. Birdsall, and at that term decree of partition was entered, commissioners of partition appointed, the report of the commissioners made, filed, and approved, and partition of the estate made among the heirs. By this report Jane Harris was decreed, among other property: '500 acres of land, being the 500 acres purchased of Isaac Batterson February 24, 1847, being the homestead of decedent.' Claiming under this partition, Jane Harris appropriated and afterwards sold the 500 acres on the Ezekiel Thomas league conveyed by Isaac Batterson to Lewis Birdsall, Sr., and by him to his two sons, Lewis Birdsall, Jr., and E. B. Birdsall. Appellee holds the title to the land in controversy under the grantees of Jane Harris by and through a regular chain of transfers.

"The following additional facts were taken from the record in support of the court's conclusion that Lewis Birdsall, Jr., and E. B. Birdsall conveyed the 500 acres of land of the Ezekiel Thomas league to their brother, M. L. Birdsall.

"(a) The following tax renditions were shown by certificate from the comptroller's office, covering land on the Ezekiel Thomas league: 1837, Maurice Birdsall, 483; 1838, no assessment record; 1839, no assessment record; 1840, M. L. Birdsall, 670; 1840, Maurice L. Birdsall, 788; 1842, not assessed to M. L. Birdsall; 1843, not assessed to M. L. Birdsall; 1844, Morris L. Birdsall, 2,351; 1845, Morris L. Birdsall, 2,351; 1846, Morris L. Birdsall, 460; 1847, not assessed to M. L. Birdsall; 1848, not assessed to M. L. Birdsall; 1849, not assessed to M. L.' Birdsall; 1850, not assessed to Birdsall or Harris; 1851, D. W. C. Harris and 2 bros. for estate of Birdsall, 500; 1852, D. W. C. Harris for estate of Birdsall, 500; 1853, D. W. C. Harris for estate of M. L. Birdsall, 500; 1854, D. W. C. Harris for estate of Birdsall, 500; 1855, D. W. C. Harris for estate of Birdsall, 500; 1856, D. W. C. Harris for Jane Harris, 500; 1857, D. W. C. Harris estate of Birdsall. agent of Jane Harris (no rendition); 1858. D. W. C. Harris, agent for M. L. Birdsall, 500; 1859, D. W. C. Harris, agent for M. L. Birdsall, 500; 1860, not assessed to Harris or Birdsall; 1861, not assessed to Harris or Birdsall.

"(b) None of the heirs of M. L. Birdsall, E. B. Birdsall, Lewis Birdsall, Jr., or Mrs. Van Tuyl or their grantees ever asserted any claim to this land hostile to the claim of Jane Harris and her grantees prior to the institution of this suit by appellee in 1925, and

then they knew of their claim only by the information given by the filing of the suit.

"(c) All the parties to the administration of the estate of M. L. Birdsall and their heirs and grantees recognized the validity of the partition of that estate, accepted and appropriated the land as decreed to them respectively by the terms of the partition decree, and, prior to the institution of this suit and their appearance herein, none of them ever advanced the claim that the 500 acres sold by Isaac Batterson to Lewis Birdsall, Sr., was not a part of the estate of M. L. Birdsall.

"(d) While the heirs of E. B. Birdsall were nonresident minors at the time of the partition, they were represented in the partition by able counsel. The petition for partition was filed by their uncle and cograntee with their father, and, after reaching their majority, they recognized the validity of the partition proceeding by appropriating and selling lands decreed to them at a time when the grantees of Jane Harris were in active assertion of the claim now advanced by appellee.

"(e) Jane Harris and her grantees have claimed the land continuously, paid taxes thereon, and filed for record their deeds under which they have been asserting their claims. Under the Jane Harris deed, a town has been laid out and partly built on the 500 acres appropriated by Jane Harris under the partition. More than 100 deeds are in evidence in appellee's chain of title to the tract of land in controversy. No effort was made to show the chain of transfers to the balance of the 500 acres.

"(f) The 500 acres claimed by Jane Harris in the partition of the estate of M. L. Birdsall was known during his lifetime as the land of M. L. Birdsall.

"(g) In the administration of the estate of Isaac Batterson, who purchased the 1,000 acres in the Ezekiel Thomas league (there being in fact 1,080 acres in this tract), the 580 acres of the Ezekiel Thomas league remaining after the sale of the 500 acres to Lewis Birdsall was sold under the following description:

" 'Being bounded south by Buffalo bayou, west by land belonging to Ezekiel Thomas' heirs as aforesaid, north by the northern boundary of the league, and east by land belonging to Maurice Birdsall.'

"This 580 acres was subsequently sold on June 2, 1844, by the folllowing description:

" 'Lying and being situated on the north bank of Buffalo bayou out of a league of land granted to Ezekiel Thomas, bounded on the north by the boundary line of league, east by lands of Maurice L. Birdsall, south by Buffalo bayou, and west by the lands of the heirs of said Thomas.'

"And again, by deed dated September 19, 1854, this Batterson tract was described as follows:

" 'On the north side of Buffalo bayou by a portion of the headright of Ezekiel Thomas commencing at the southwest corner of M. L. Birdsall's survey.'

"(h) While M. L. Birdsall at one time paid taxes on 2,351 acres on the Ezekiel Thomas league before his death, this rendition was reduced to 400 acres, afterwards rendered by his administrator as 500 acres."

On the facts found the Court of Civil Appeals concluded that the presumption of the deed from E. B. Birdsall to Maurice L. Birdsall has full support, and therefore affirmed the judgment of the trial court. The plaintiffs in error take issue with this conclusion of the Court of Civil Appeals, asserting that there is no legitimate evidence to support the presumption of a deed from E. B. Birdsall to Maurice L. Birdsall. The defendant in error, upon the contrary, contends that the testimony is ample to support this finding of fact. An examination of the record has convinced us that while the relevant testimony is rather meager, yet there is sufficient amount of it to justify the conclusion reached by the Court of Civil Appeals, notwithstanding another finding of the Court of Civil Appeals which, we think, is supported by the testimony *that the heirs of E. B. Birdsall did not know of the claim of the defendant in error until this suit was filed.* This latter finding of the Court of Civil Appeals necessarily confines the issue to whether E. B. Birdsall, in his lifetime, knew of the claim of Maurice L. Birdsall and acquiesced therein. E. B. Birdsall acquired, with his brother Lewis, this land through a deed of gift from their father in 1838. There is no deed to be found in the title of defendant in error from E. B. Birdsall to Maurice L. Birdsall. E. B. Birdsall died in 1843, and Maurice L. Birdsall in 1847. The burden of proof rested upon the defendant in error to establish the alleged fact that E. B. Birdsall had conveyed the land to Maurice L. Birdsall. This being the situation, it was not incumbent upon the plaintiffs in error to introduce any proof that any such deed ever existed until the defendant in error had made a prima facie case. The plaintiffs in error assert that no such prima facie case was made.

In order to raise the issue of the presumption of a grant of the land, the evidence must *tend* to establish, not only that the person to whom the presumed grant is alleged to have been made asserted title thereto, but that the owner of the alleged previous title had knowledge of and acquiesced in the claim so made. Baldwin v. Goldfrank, 88 Tex. 257, 31 S. W. 1064; Magee v. Paul, 110 Tex. 470, 221 S. W. 254. The Supreme Court, speaking through Judge Greenwood, states the rule on this subject in Magee v. Paul, supra, as follows: "The rule is sound which permits the inference that an apparent own-

er has parted with his title from evidence, first, of a long-asserted and open claim, adverse to that of the apparent owner; second, of nonclaim by the apparent owner; and third, of acquiescence by the apparent owner in the adverse claim." While knowledge of the claim is essential to acquiesce therein, yet this knowledge may be shown by circumstances and, of course, the consequent acquiescence may also be shown in the same way and by the same circumstances. As stated in Surghenor v. Ducey, by the Court of Civil Appeals, 139 S. W. 22 : "Establishing the execution of a deed by presumption is in substance" an effort to prove "it by circumstantial evidence." If it were otherwise, a presumption of fact that a deed, not produced, once existed could scarcely ever be established. Frugia v. Trueheart, 48 Tex. Civ. App. 513, 106 S. W. 742; Taylor v. Watkins, 26 Tex. 695. A presumption of fact is that mental process by which the existence of one fact is inferred from proof of some other fact or facts with which experience shows it is usually associated by succession or coexistence. "A 'presumption of fact' is a probable inference, which common sense, enlightened by human knowledge * * *, draws from the * * * coincidence of * * * circumstances with each other, being always to be drawn by the jury." "The execution of a deed may be established by circumstances, or by the presumption arising from circumstances of the existence of such muniments of title as are necessary to give lawful origin to a title long openly asserted on one side, with acquiescence in such claim on the other." Le Blanc v. Jackson (Tex. Civ. App.) 161 S. W. 60; Luten v. Missouri, K. & T. R. Co. of Texas (Tex. Civ. App.) 184 S. W. 798.

■ The rule by which these presumptions of fact are made admissible is one of evidence, and the rule is greatly liberalized in its application where the evidence is circumstantial. Pounds v. Minter (Tex. Com. App.) 13 S.W.(2d) 351; Cooper v. State, 19 Tex. 449; Landers v. State, 35 Tex. 359; Ballew v. State, 36 Tex. 98; Barnes v. State, 41 Tex. 342; Marshall v. State, 5 Tex. App. 273; Francis v. State, 7 Tex. App. 501; Irby v. State, 25 Tex. App. 203, 7 S. W. 705; Monk v. State, 27 Tex. App. 450, 11 S. W. 460; Leeper v. State, 29 Tex. App. 63, 14 S. W. 398; Crass v. State, 30 Tex. App. 480, 17 S. W. 1096. This liberality of application arises from the necessity of the situation. If the testimony tends to prove the facts relevant to the ultimate fact sought to be established, it is admissible. Any circumstance may be of such a nature as that it tends to establish each and all of the necessary legal ingredients of the ultimate fact sought to. be established. The ultimate fact sought to be established in this case is that a presumption of fact existed that E. B. Birdsall voluntarily executed and delivered, for a legally suffi-

cient consideration, a conveyance of the land involved, to Maurice L. Birdsall. There is necessarily embraced within this ultimate fact, that Maurice L. Birdsall claimed to be the owner of the land, and that E. B. Birdsall, with knowledge of this claim, acquiesced therein.

■■ There have been cases, and there probably will be others, wherein one circumstance is of such comprehensive nature that it tends to prove the existence of an asserted claim of ownership by one party as well as the knowledge of such claim and acquiescence therein by another. Common sense and human experience both concur in the conclusion that where one person asserts a claim of ownership to a piece of property formerly owned by another, and that other, having knowledge of this claim, acquiesced therein, the claim of ownership is almost conclusively established, though, of course, subject to be rebutted and the circumstances explained in such a way as to destroy their probative force. It is a matter of common knowledge that one who is the owner of a piece of valuable property will not permit another to assert ownership thereto, when a claim of such ownership is seriously made, in silence and, without making an effort to assert his rights as such true owner. Hence, the law permits one who asserts ownership in a tract of land wherein one of the links of title is missing, to establish the presumption that such link once existed by establishing the fact that he had notoriously asserted, for a long period of time, a claim of ownership, and that such claim had been known to the person in whom the title previously had been, and that such person had acquiesced in such claim. Preston v. State, 8 Tex. App. 30. "Relevancy" is defined to be that which conduces to the proof of a pertinent hypothesis; a pertinent hypothesis being one which, if sustained, would logically influence the issue. Hence, it is relevant to put in evidence any circumstance which tends to make the proposition at issue more or less probable. McGuire v. State, 10 Tex. App. 125; Grimmett v. State, 22 Tex. App. 36, 2 S. W. 631, 58 Am. Rep. 630; Russell v. State, 11 Tex. App. 288; McMahon v. State, 16 Tex. App. 357.

■ The true rule would seem to be that if, from all of the facts and circumstances introduced in evidence, it is more reasonably probable that the claim made that a deed was executed, than that it was not. then a jury trying the case, or judge without the jury, would be warranted in presuming in favor of the claimed existence of the deed, and find accordingly. The circumstances, relevant to the issue, while as heretofore stated, are meager, yet they must of necessity be so on account of the great length of time elapsing since the death of E. B. Birdsall—a period of 80 years.

■■ This is especially true with the record in the condition in which it is, when the

facts are necessary to be established by testimony which has an actual relation to the main fact sought to be established. E. B. Birdsall only acquired an interest in the land six years previous to his death, and during that time, or at least up to the time he parted with his interest, his brother Lewis owned an equal interest in the land and under the same deed. This deed was executed by the father. E. B. Birdsall, in addition to his brother Lewis, co-owner with him of the land, also had one other brother, to wit, Maurice L. Birdsall, and two sisters. The 500 acres in controversy was a part of a 1,000-acre tract and was acquired by Lewis Birdsall, Sr., from Isaac Batterson. After the death of E. B. Birdsall in 1843 and of Maurice L. Birdsall in 1847, Lewis Birdsall, Jr., the cograntee with E. B. Birdsall in the deed from Lewis Birdsall, Sr., to them, brought a suit for partition of the estate of Maurice L. Birdsall as one of the heirs of his brother, and in that suit this 500 acres in controversy was recognized by Lewis Birdsall, Jr., as a part of the estate of Maurice L. Birdsall. In that suit no contention was made that the 500 acres in controversy afterwards set apart to a sister of Maurice L. Birdsall was not a part of his estate. This fact almost conclusively establishes the fact that Lewis L. Birdsall, Jr., had conveyed his interest in the 500 acres to his brother Maurice L. Birdsall, and is entitled to some probative force as a relevant circumstance tending to prove that the cograntee, with Lewis Birdsall in the deed conveying this land, had also either conveyed the land to his brother Maurice L. Birdsall or had conveyed it to some other person, the title to which had finally found its way in Maurice L. Birdsall during his lifetime. A jury trying this issue, or a judge without a jury, might well have been justified in giving this fact more weight, by reason of the further fact that this recognition was by this particular brother of the claim of the legal representatives of the estate of Maurice L. Birdsall. The brother, part owner of the 500 acres, might well have had better opportunity to have acquired information as to what his brother E. B. Birdsall had done with the land he obtained from his father than one who was a stranger to the family would have had. The record further discloses that only a year after E. B. Birdsall died, this land had acquired a reputation, among the people living in the community, as the property of Maurice L. Birdsall. This is a circumstance which justified the trial judge without a jury in giving some probative force towards proving the ultimate fact sought to be established that E. B. Birdsall had conveyed the land to Maurice L. Birdsall. Reputation in a case like this, shown to have existed, must have

been acquired by either actual possession of the land by Maurice L. Birdsall, or by some notorious claim of ownership of it made by him. There is shown, ten years later, to have existed, with reference to this claim of Maurice L. Birdsall, a similar reputation. This reputation, shown by the deed of 1854, might have arisen from irrelevant facts entirely, and yet it might have arisen in part from the same facts by which the reputation of ownership of this land was acquired previous to 1844. However, the admissibility of this recitation in the deed of 1854 could not be properly questioned. The deed was admissible, but it was a question of fact for the trial judge to determine how much weight, if any, should be given to the recitation therein in determining the ultimate fact sought to be established.

The record further indicates that there is a recitation in a deed made by Isaac Batterson describing the 500 acres retained by him out of the 1,000 acres, a part of which he sold to Lewis Birdsall, Sr. In describing this particular 500 acres, the deed calls for a line of the 500 acres in controversy, as belonging to Maurice L. Birdsall. The date of this deed is not shown, but if it occurred even as late as 1854 it might have been given some probative force by the judge trying the case.

There is another relevant fact in the record to the effect that Maurice L. Birdsall had assessed against him for taxes lands on this survey previous to the death of E. B. Birdsall. This assessment of lands on this survey, as the property of Maurice L. Birdsall, was admissible, since it *tended* to establish the alleged fact that Maurice L. Birdsall was claiming this 500-acre tract as his property. We have been unable to find any other relevant facts in the record bearing on the question whether E. B. Birdsall had knowledge of the claim of his brother, and that he acquiesced in this claim, than those we have related; but we think that in view of the long lapse of time between the death of E. B. Birdsall and the effort to prove the issue, justified the Court of Civil Appeals in concluding that these facts, irrespective of the other facts upon which the Court of Civil Appeals rested its decision, were sufficient to support its finding that a presumption had been established that E. B. Birdsall had conveyed this land to his brother, Maurice L. Birdsall.

We therefore recommend that the judgment of the Court of Civil Appeals affirming that of the district court be affirmed.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both affirmed, as recommended by the Commission of Appeals.