**Erasmo ARREGUIN et ux., Appellants,**

v.

**Marcello CANTU et ux., Appellees.**

**No. 16477.**

Court of Civil Appeals of Texas, San Antonio.

Nov. 26, 1980.

Randolph M. Janssen, San Antonio, for appellants.

Marion T. Carson, San Antonio, for appellees.

MURRAY, Justice.

This suit was instituted by Marcello Cantu and wife, Trinidad Cantu, against Erasmo Arreguin and wife, Angelina Arreguin, for a specific performance of an alleged contract in writing in which appellants agreed to sell and appellees agreed to buy a certain tract of land consisting of 7.59 acres situated in Bexar County, Texas, for the sum of $350.00 per acre payable $50.00 per month, plus interest at 7¼ percent. After trial before a jury the trial court entered judgment for appellees and appellants have appealed.

In this case, appellees sought to establish their rights based upon a lost contract of sale. It is well established that the existence, execution and content of a lost instrument may be shown by circumstantial evidence. *Miller v. Fleming,* 233 S.W.2d 571 (Tex.1950).

In response to special issues, the jury found that appellants and appellees did enter into an agreement for the sale of the land for $350.00 per acre, plus interest at 7¼ percent, and that this agreement was reduced to writing and signed by appellants in April of 1966. By two points of error the appellants attacked these findings of the jury on both grounds of factual and legal sufficiency of the evidence. We overrule both points.

Mr. Cantu testified that he and Mr. Arreguin were good friends and had been working together for the Harlandale Independent School District for many years. In March of 1966, Mr. Arreguin offered to sell to him the 7.59 acres of land because he needed the money and would rather that Mr. Cantu buy the land than someone else. They came to an agreement and in April of 1966 Mr. and Mrs. Arreguin came to Mr. Cantu's house and they signed a contract of sale for the land. The Cantu's did not read the contract but Mr. Cantu saw at the top of the paper the words "Contract of Sale." Mr. Cantu made an initial payment of $300.00 and then $50.00 per month until the entire amount was paid. Mr. Cantu took possession of the property in April of 1966 and was in possession of the property continuously until the present time. After Mr. Cantu made his final payment in January of 1971, he asked Mr. Arreguin for a deed. Sometime later he and Mr. Arreguin went to Mr. Arreguin's lawyer's office for the purpose of getting a deed. At this meeting Mr. Cantu was told that he could not have a deed to 7.59 acres because Mr. Arreguin had in the interim sold 1.2 acres to a third party on or about March 21, 1977. After some unsuccessful negotiations, Mr. Arreguin told Mr. Cantu that he wanted his land back. Mr. Cantu refused the offer of Mr. Arreguin to give him his money back and insisted on a deed to the 7.59 acres.

Mr. Cantu was in possession of the land from April, 1966, and for the first two years planted crops himself. After that he rented the land to a Mr. Jesse Tejeda until the year 1974. Mr. Arreguin did not contest Mr. Cantu's right to the possession of the land or the right to collect rents until this lawsuit was filed in 1978. Mr. Cantu paid back taxes and current taxes on the property through 1977. Mr. Cantu further testified that in February, 1971, he and Mr. Arreguin went to the tax assessor's office in the Bexar County Courthouse and filed a copy of the contract of sale for the purpose of changing the name on the tax rolls from Mr. Arreguin to Mr. Cantu. An employee of the tax assessor's office confirmed from their records that a contract of sale was filed that date and the name changed but that the contract of sale had been lost or misplaced and could not be found.

Mr. Arreguin testified that he did discuss selling the land to Mr. Cantu, but that a written contract was never executed. He further testified that Mr. Cantu had made payments to him since 1966 and that after the meeting in his lawyer's office he offered to return the money to Mr. Cantu. He admitted that Mr. Cantu had possession of the property from 1966 up to the present and in answer to a question of who had used the property after 1966 he stated: "Well, he had the land since then until now." Mr. Arreguin testified that he did not accompany Mr. Cantu to the courthouse to have the property changed into Mr. Cantu's name and in answer to a question whether or not he had authorized Mr. Cantu to change the property into his name he answered: "I don't remember. I don't think so." Mr. Arreguin testified that he never signed a contract but on cross-examination testified as follows:

Q  Do you still deny that you and your wife signed a contract of sale with Mr. Cantu and his wife for the purchase of that land?

A  No, I don't remember signing any contract. My wife either, she don't know nothing about this, And like I say when he gave me the money I put it in a safe.

Q  But you took the money from him for the purchase of the land?

A  Yes.

Q  And there is no doubt?

A  Because he was using the land.

Q  You took the money from him for the purchase of land?

A  Yes.

Q  That was your testimony and there -was no doubt as to what land he was attempting to purchase?

A  Seven acres.

Q  7.59 acres?

A  Yes.

.    .    .    .    .

Q  That's when you made this offer to give it back?

A  When we started making the contract and he say that he was not satisfied because there was no seven acres exactly.

Q  Let me go into that one part.  You said, "When we started making the contract."

A  Yes, in 1977.

■  After a careful consideration of the evidence under all the surrounding facts and circumstances, we hold that the evidence was sufficient to sustain the findings of the jury.  *Miller v. Fleming, supra.*  In *Miller* the Supreme Court speaking of the rule by which presumptions of fact are made admissible, stated:

The application of this rule rests upon the necessity of the situation.  If under all the facts and circumstances the testimony tends to prove that the superior legal title to this land passed to Claflin & Company and Hecht Brothers & Company by deed and written transfer, although not shown by the record, and that a formal written transfer and assignment of the vendor's lien was executed by James C. Walker to Claflin & Company and Hecht Brothers & Company, though not shown in the record, such testimony is admissible.  A deed or other instrument may be proved by circumstances or presumptive evidence, and the tendency of the courts is to extend rather than limit the rule.  [Citations omitted.]

In the *Masterson* [*v. Harris County Houston Ship Channel Naval Dist.*, Tex. Com.App.] case, *supra* [15 S.W.2d 1011, 1015], it was held '* * * if, from all of the facts and circumstances introduced in evidence, it is more reasonably probable that the claim made that a deed was executed, than that it was not, then a jury trying the case, or judge without the jury, would be warranted in presuming in favor of the claimed existence of the deed, and find accordingly.'

233 S.W.2d at 575.

■  Appellants' reliance on the case of *Crosby v. Davis*, 421 S.W.2d 138 (Tex.Civ. App.—Tyler 1967, writ ref'd n. r. e.), is misplaced.  In *Crosby*, the court held that the circumstantial evidence failed to establish a lost deed.  A lost deed may be proved by circumstantial evidence or direct evidence and when direct evidence is relied on, the witness must have seen, read and must be able to speak pointedly and clearly of its tenor and contents.  In the present case, the circumstantial evidence is sufficient to sustain the findings.  The judgment of the trial court is affirmed.